

**SIGNED this 08 day of June, 2007.**

_____
**JOHN T. LANEY, III
UNITED STATES BANKRUPTCY JUDGE**
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF GEORGIA
### ATHENS DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| STEWART FINANCE COMPANY, | : | CASE NOS. 03-30277 |
| STEWART NATIONAL FINANCE COMPANY, and | : | 03-30278 |
| D & E ACQUISITIONS, INC. | : | 03-30398 |
| | : | |
| Debtors. | : | Procedurally consolidated |
| | : | under Case No. 03-30277 |
| _____ | : | |
| | : | |
| S. GREGORY HAYS, Chapter 11 Trustee of | : | JUDGE LANEY |
| STEWART FINANCE COMPANY, | : | |
| STEWART NATIONAL FINANCE COMPANY, and | : | |
| D & E ACQUISITIONS, INC. | : | |
| | : | |
| Plaintiff, | : | A.P. NO. 05-3085 |
| | : | |
| vs. | : | |
| | : | |
| FARMERS AND MERCHANTS BANK, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION**

This matter is before the Court on the cross-motions for summary judgment[1] in the action of Chapter 11 Trustee, S. Gregory Hays ("Trustee"), against Farmers and Merchants Bank ("F&M") to avoid and recover, as fraudulent transfers, certain payments made by Stewart Finance Company ("Debtor") to F&M on obligations owed the bank by Debtor's principal, John Benjamin Stewart, Jr. ("Stewart"). In his motion, the Trustee abandoned certain counts of his complaint including allegations of actual fraud. The only counts of the complaint that remain are those seeking avoidance and recovery of certain transfers as being constructive fraudulent conveyances. On March 5, 2007, the Court held a hearing on the motions and heard argument by counsel. Following the hearing, the Court took the motions under advisement, inviting the parties to submit supplemental briefs if they so chose. The relevant facts in the matter being wholly uncontested, the Court is called to consider the application of O.C.G.A. §§ 18-2-22(3) and 18-2-74(a) and § 548(a)(1)(B) of the Bankruptcy Code ("Code") to the facts of the case as set forth below.

Summary judgment is appropriately entered by the Court if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[2] In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party.[3] The moving party bears the initial burden of proving that, given the evidence of record, no reasonable jury could return a verdict for the non-moving party.[4] Once the moving party satisfies this initial burden, then the burden shifts to the non-moving party who must come forward with specific facts beyond its pleadings, by way of affidavits,

---

[1] The motion filed on behalf of the Trustee, S. Gregory Hays, is for *partial* summary judgment.
[2] Fed. R. Bankr. P. 7056(c).
[3] Mauter v. Hardy Corp., 825 F.2d 1554, 1556 (11th Cir.1987).

2

depositions, answers to interrogatories, and admissions on file, which show that there is a genuine issue to be tried.[5] In cases in which the applicable substantive law requires the non-moving party to bear the burden on a particular issue or issues, the moving party is under no obligation to submit evidentiary materials negating the claim.[6] Rather, the moving party may rest on a demonstration that the record contains no evidence to support the non-moving party's position on that issue and require the non-moving party to submit evidentiary materials sufficient to show that a genuine issue of material fact exists and must be tried.[7] Entry of judgment is mandated against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[8]

## **FINDINGS OF FACT**

Each party, with its respective motion for summary judgment, filed a statement of uncontested facts as directed by Local Bankruptcy Rule 7056-1. Neither party, however, responded to the other's statement of uncontested facts as required by subsection (b) of that same rule. As such, in accordance with subsection (c) of the Rule and for purposes of this inquiry, the material facts set forth in each party's statement of uncontested facts are all deemed admitted by the opposing party. This is of no real consequence being as the parties stated at the hearing that the relevant facts to the matter are not in dispute. The Court will recite the facts as set forth in the parties' statements of uncontested facts and as discussed at the hearing.

F&M is a bank chartered under the laws of the State of Georgia with its main offices located

---

[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[6] COLLIER ON BANKRUPTCY 10:7056.06 at 7056-13 (15th ed. rev. 2006).
[7] *Id.*
[8] *Celotex Corp.*, 477 U.S. at 322; Wilson v. Lemington Home for the Aged, 2000 WL 33712287 at *1 (W.D. Pa. Apr. 12, 2000) (not reported in F.Supp.2d).

in Washington, Georgia.[9]  F&M began a banking and lending relationship with Debtor and its principal, John Benjamin Stewart, Jr., in the early 1990s.[10] In 1993, to secure loans made to Stewart and Debtor, F&M acquired a first priority security interest in certain real estate owned by Stewart and Debtor known as 610 and 612 Sibley Avenue, Union Point, Georgia.[11]  The real estate was made up of two adjacent office buildings, one occupied by a loan office of Debtor and the other occupied by the corporate headquarters of Debtor.[12]  Debtor owned the property at 610 Sibley Avenue, having acquired title from Stewart in 1993.[13]  At some time after 1993, Debtor also acquired title from Stewart to the property at 612 Sibley Avenue.[14]  The two properties had a combined appraised value of $653,000.00.[15]  The security deeds under which F&M acquired its security interest in the two office buildings contained standard dragnet provisions securing all other indebtedness of Debtor and Stewart by that real property.[16]

During the period January 3, 2000 through April 2, 2001, Debtor made sixteen (16) regular monthly payments of $15,000.00 each, totaling $240,000.00, to F&M to satisfy an obligation owed individually by Stewart.[17]  The obligation was secured by the real estate described above, along with other collateral including a $500,000.00 certificate of deposit belonging to Debtor.[18]  This obligation, referred to as the "Real Estate Loan" for ease of identification, was periodically and regularly renewed.[19]  In November of 1998, at the time of one of the renewals, F&M advanced

---

[9] F&M's Statement of Uncontested Facts at 1.
[10] *Id*. at 2.
[11] *Id*.
[12] *Id*.
[13] *Id*.
[14] *Id*.
[15] *Id*.
[16] *Id*. at 2-3.
[17] *Id*. at 3.
[18] *Id*.  The $500,000.00 certificate of deposit was numbered 49203.
[19] *Id*.

Stewart an additional $75,000.00, at least $65,000.00 of which was concurrently paid to Debtor by Stewart.[20]

On March 30, 1998, F&M loaned Stewart $609,750.00 for the purpose of purchasing stock of Debtor.[21] The proceeds of this loan, referred to as the "Stock Purchase Loan," were deposited into one of Stewart's accounts at F&M. Immediately thereafter, $604,750.00 of the proceeds was transferred into an account of Debtor.[22] Debtor guaranteed the Stock Purchase Loan.[23] The loan was secured by the $500,000.00 certificate of deposit belonging to Debtor and by the real estate described above, by virtue of the dragnet provision found in the security deeds.[24] Debtor made periodic monthly installment payments, generally of the accrued interest, on the Stock Purchase Loan. During the period January 24, 2000 through July 19, 2002, Debtor made twenty-six (26) such payments totaling $144,050.35.[25]

Debtor also made payments to F&M on Stewart's behalf in satisfaction of a personal loan separate and distinct from the Real Estate Loan and Stock Purchase Loan described above. During the period June 25, 2002 through August 27, 2002, Debtor made two (2) payments on this obligation, referred to as the "Stewart Loan," totaling $12,307.50.[26]

On February 10, 2003, Debtor filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. Stewart subsequently committed suicide in May of 2004. The Trustee filed this Adversary Proceeding on June 20, 2005. In February of 2003, F&M filed the three (3) following

---

[20] *Id.*
[21] *Id.*
[22] *Id.* at 4.
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.* at 5.

5

secured proofs of claim in the procedurally consolidated case[27]:

| Account | Amount |
| --- | --- |
| No. 435241400 | $ 25,071.50 |
| No. 435221100 | $ 401,144.46 |
| No. 435219600 | $ 125,500.92 |

F&M's proofs of claim totaled $551,716.88.

On July 22, 2004, the Court entered a consent order lifting the stay as to F&M's security interest in the $500,000.00 certificate of deposit belonging to Debtor.[28] Upon a subsequent liquidation of the certificate, F&M received the sum of $500,000.00 to be applied toward its claims with the Trustee receiving all accrued and unpaid interest.[29] F&M thereafter amended its proofs of claim to reflect an outstanding balance of $104,450.82, including attorneys fees.[30] The remaining balance claimed by F&M continued to be secured by F&M's security interest in the two Sibley Avenue properties belonging to Debtor.[31]

The Sibley Avenue properties were eventually sold at auction. F&M received payment of the balance of its secured claim, $104,450.82.[32] Having been paid in full, F&M's secured claims were deemed withdrawn.[33] The estate received amounts substantially in excess of the balance of the claim owed to F&M from the auction sale of Debtor's Sibley Avenue properties, which secured all of F&M's claims.[34]

Debtor and its associated entities were insolvent during all of 2000, 2001, and 2002, the time

---

[27] *Id.*
[28] *Id*.
[29] *Id*. at 5-6.
[30] *Id*. at 6.
[31] *Id.*
[32] *Id.*
[33] *Id*.
[34] *Id*.

6

periods during which the transfers in question were made.[35] Certain unsecured debenture holders exist who had claims against Debtor as of the dates Debtor and its related entities filed for bankruptcy protection and whose claims remain unpaid to this date.[36] At no time during the course of receiving the payments in question did F&M have any knowledge that Debtor or its related entities were insolvent or unable to pay their debts as they accrued.

## DISCUSSION AND CONCLUSIONS OF LAW

The Trustee's complaint to avoid as fraudulent transfers certain payments made by Debtor to F&M in satisfaction of personal obligations owed the bank by Debtor's principal, is based upon three distinct causes of action. First, the Trustee seeks to avoid and recover $367,245.42 in transfers made by Debtor to F&M utilizing § 544 of the Code and Georgia's fraudulent transfer statute in effect at the time of the transfers, O.C.G.A. § 18-2-22(3).[37] Second, the Trustee seeks to avoid and recover two transfers totaling $3,485.17 using § 544 of the Code and Georgia's current fraudulent transfer statute, O.C.G.A. § 18-2-74(a). The two transfers mentioned were made after July 1, 2002, the effective date of this Georgia statute. Third, citing § 548 of the Code, the Trustee seeks to avoid and recover transfers totaling $29,112.43 (including the two transfers totaling $3,485.17 mentioned above), representing transfers made by Debtor to F&M within one year of Debtor's bankruptcy petition date, February 10, 2003. As described above, the transfers or payments the Trustee seeks to avoid were made by Debtor to F&M in satisfaction of three different obligations owed the bank by Stewart—the "Real Estate Loan," the "Stock Purchase Loan," and the personal loan, referred to as the "Stewart Loan."

---

[35] Trustee's Statement of Uncontested Facts at 1. This finding is made for purposes of this Adversary Proceeding only and arises from the admissions and stipulations of the parties. This finding may not be cited in other adversary proceedings in this consolidated case where the issue of insolvency may be in dispute.
[36] *Id*. at 2.
[37] O.C.G.A. § 18-2-22 is the applicable statute for transfers made prior to July 1, 2002.

7

### A. § 544(b) and O.C.G.A. § 18-2-22(3)

Pursuant to the authority granted in § 544(b) of the Code, the Trustee in his complaint seeks to avoid, under applicable state law, O.C.G.A. § 18-2-22(3), $367,245.42 in transfers made by Debtor to F&M in satisfaction of a personal obligation owed the bank by Stewart. Section 18-2-22(3) of the Official Code of Georgia is available for the avoidance of fraudulent transfers occurring prior to July 1, 2002, the effective date of Georgia's current fraudulent transfer statute, O.C.G.A. § 18-2-74. The transfers the Trustee seeks to avoid under O.C.G.A. § 18-2-22(3) did in fact occur prior to July 1, 2002. The Trustee seeks to avoid the vast majority of the transfers in question under this Section.

Section 18-2-22(3) of the Official Code of Georgia provides:

> The following acts by debtors shall be fraudulent in law against creditors and others and as to them shall be null and void:
> …
> (3) Every voluntary deed or conveyance, *not for a valuable consideration*, made by a debtor who is insolvent at the time of the conveyance.[38]

In order for the Trustee, or any plaintiff, to prevail under paragraph (3), it must be proven that: (1) the deed or conveyance was voluntary; (2) there was no valuable consideration exchanged for the transfer; and (3) the debtor was insolvent at the time of the transfer.[39] In *Stokes v. McRae*,[40] the Supreme Court of Georgia stated that a "voluntary" deed or conveyance is a transfer made without valuable consideration.[41] Valuable consideration is something founded on money or something convertible to money, or having a value in money.[42]

---

[38] O.C.G.A. § 18-2-22(3) (1999) (repealed by Ga. L. 2002, p. 141, § 2, effective July 1, 2002) (emphasis added).
[39] *In re* Holmes, 296 B.R. 567, 572 (Bankr. M.D. Ga. 2003) (Hershner, C.J.) (citing *Dearing v. A.R. III, Inc.*, 266 Ga. 301, 466 S.E.2d 565, 566 (1996)).
[40] 247 Ga. 658, 278 S.E.2d 393 (1981).
[41] *Id.*
[42] *Id.*

8

It should be noted that in the bankruptcy context, when considering application of this statute and other fraudulent conveyance statutes like it, a court's proper focus should be on the net effects of the transfers in question on the debtor's bankruptcy estate, *i.e.*, the funds available for unsecured creditors. The purpose of fraudulent conveyance statutes like O.C.G.A. §§ 18-2-22(3) and 18-2-74 and § 548 of the Code, is to preserve and make available estate assets for payment to unsecured creditors. It seems only logical that if the debtor's unsecured creditors are no worse off because the debtor, and therefore the estate, has received something reasonably equivalent in value to what the debtor has transferred, then no fraudulent transfer or conveyance has occurred.[43]

The parties to this matter have stipulated that Debtor was insolvent at the time the transfers in question were made. Further, it is not disputed that the Trustee has standing to bring this action under § 544(b) of the Code considering that it is admitted that there were unsecured creditors existing at the time of the transfers that could bring this action. The only issue remaining with regard to the application of O.C.G.A. § 18-2-22(3) is whether the transfers were "voluntary" or, rather, "not for a valuable consideration." In support of his motion for partial summary judgment on this issue, the Trustee argues, "because the payments of principal and interest to the Bank benefited only the Bank and Ben Stewart, there was no 'valuable consideration' flowing to the Debtor on account of the transfers."[44] The Trustee states that the "transfers did not satisfy legal obligations of the Debtor, they satisfied legal obligations of Ben Stewart . . . .," therefore, the transfers did not confer a benefit to Debtor.[45]

---

[43] *See* Harman v. First American Bank of Maryland (*In re* Jeffrey Bigelow Design Group, Inc.), 956 F.2d 479, 484 (4th Cir. 1992) (considering and discussing § 548).
[44] Trustee's Brief in Support at 6 (doc. 32, Jan. 22, 2007).
[45] *Id.*

F&M counters by arguing that the Trustee's assertion is too simplistic and fails to recognize that value flowed to Debtor other than through the direct satisfaction of a legal obligation owed by Debtor itself. F&M suggests that Debtor's receipt of a dollar-for-dollar increase in its equity interest in the real estate that secured each of three classes of obligations on which Debtor made payments, qualified as "valuable consideration" for purposes of O.C.G.A. § 18-2-22(3) and the other statutes at issue. It is undisputed that by way of dragnet clauses in its deeds to secure debt, F&M was secured on each of the three obligations on which Debtor made payments, by real property belonging to Debtor. It is also undisputed that F&M was *fully* secured on each of those debts by that real property. Further, F&M argues that because Debtor guaranteed the Stock Purchase Loan, any payments made by Debtor in satisfaction of that obligation were certainly made in exchange for valuable consideration considering that each payment directly reduced Debtor's guaranty liability.

Returning to the standard the Court must apply when considering motions for summary judgment, entry of judgment is mandated against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Where no issue of genuine material fact exists and the moving party is entitled to judgment as a matter of law, then summary judgment is appropriate. Here, the Trustee would bear the burden at trial of proving that the three elements of O.C.G.A. § 18-2-22(3) were satisfied—*i.e.*, (1) that the conveyance or deed was voluntary; (2) that there was a lack of valuable consideration; and (3) that the Debtor was insolvent at the time of the transfers. The facts essential to the Court's determination of whether valuable consideration was received by Debtor in exchange for the payments it made have been provided and are not in dispute. All that remains is for the Court to determine whether the Trustee has carried his burden of proving that valuable consideration was not given in exchange for the transfers. Whether the dollar-for-dollar increase in Debtor's equity

10

interest in its real estate that secured the obligations on which it made payments or whether Debtor's reduction in its guaranty liability under the Stock Purchase Loan constituted valuable consideration for purposes of O.C.G.A. § 18-2-22(3) is proper for determination by the Court at this time. No genuine issue of material fact remains and summary judgment is appropriate for the party that prevails on the issue of whether what Debtor received is "valuable consideration" under O.C.G.A. § 18-2-22(3).

The Supreme Court of Georgia has opined, "valuable consideration is something founded on money, or something convertible into money, or having a value in money."[46] It is apparent to the Court that by making payments on the personal obligations of Stewart—which were fully secured by real property belonging to Debtor and in one instance, guaranteed by Debtor—that Debtor received a valuable monetary benefit. By making the payments, Debtor increased its equity interest in the real property that was used to secure the obligations on which it paid and with regard to the Stock Purchase Loan that Debtor guaranteed, Debtor decreased its guaranty liability. The resultant increase in equity interest and reduction in guaranty liability were in direct dollar-for-dollar proportion to the payments or transfers Debtor made. Unlike what the Trustee suggests, the fact that the obligations were those of Stewart personally and not Debtor, is of no legal consequence in this case. The Court can find no basis for applying the Trustee's suggested standard that if a debtor makes a payment on a debt to which the debtor is not legally obligated that such payment cannot in any case result in a monetary benefit to the debtor. The monetary benefit received by this Debtor is evidenced by the subsequent auction sale of the real property and the Trustee's receipt of amounts substantially in excess of the balance of the claim owed to F&M. Had Debtor's payments not

---

[46] *Stokes*, 247 Ga. 658, 278 S.E.2d at 395.

increased the equity interest in Debtor's real property, then some of the funds received by the estate after the auction sale of the property would not have been realized.

Clearly, the transfers attacked under O.C.G.A. § 18-2-22(3) did not result in a depletion of Debtor's bankruptcy estate. The Trustee is really in no position to complain considering that the estate has received, via the subsequent sale of the property and the taking of an equity share in the proceeds, all of the monies to which it would have been entitled considering F&M's status as a fully-secured creditor. Should the Trustee prevail in this action, then the estate would receive a windfall in the form of a double-recovery at the expense of the fully-secured creditor, F&M. It was not until F&M had been paid in full that its secured claims were deemed withdrawn. Had Debtor not made the payments in question, then the secured claims of F&M would simply have been larger and the estate's take of its equity from the proceeds of the auction sale of the property smaller. It would be unjust for the Court to require F&M, which had been a fully-secured creditor, to fund a double recovery for the estate first out of the proceeds of the sale of F&M's collateral and second by a ruling in the Trustee's favor today. As such, it is the conclusion of the Court as to this count brought under O.C.G.A. § 18-2-22(3) that Debtor received "valuable consideration" in the form of an increase in its equity interest in its real property and a reduction in its guaranty liability in direct proportion to the payments its made on Stewart's behalf to F&M. F&M clearly had the right to be paid in full considering that the debts owed to F&M were fully secured. F&M was paid in part through the payments received by Debtor and in part from proceeds of the sale of its collateral, Debtor's real property. The auction sale of the real property cannot now be undone to allow F&M to receive the balance of the debt owed it by Stewart minus an amount that would be avoided in this action. A decision on this portion of the Trustee's action must be made in favor of F&M.

F&M has argued that the Trustee should not succeed in this action considering that Debtor was the eventual benefactor of the funds loaned to Stewart. The Court is satisfied that the discussion above establishes a proper basis of a finding in F&M's favor, therefore, this issue will not be addressed.

### B.  § 544(b) and O.C.G.A. § 18-2-74(a)(2)

Using § 544(b) and Georgia's current fraudulent transfer statute, O.C.G.A. § 18-2-74(a)(2), the Trustee also seeks to avoid $3,485.17 in transfers made by Debtor to F&M in satisfaction of a personal obligation owed by Stewart. Section 18-2-74(a)(2) provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation incurred, if the debtor made the transfer or incurred the obligation:
> . . .
> (2) Without receiving a *reasonably equivalent value* in exchange for the transfer or obligation; and the debtor:
> > (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > (B) Intended to incur, or believed or reasonably believed that he or she would incur, debts beyond his or her ability to pay as they became due.[47]

Similar to the determinative issue with regard to O.C.G.A. § 18-2-22(3), the Court must determine as to O.C.G.A. § 18-2-74(a)(2), whether "reasonably equivalent value" passed to Debtor in exchange for the payments it made to F&M on Stewart's behalf. Whether Debtor received reasonably equivalent value for the transfers it made to F&M is a determination that is properly made based upon the specific facts and circumstances of the case. Here, as is discussed above, Debtor received dollar-for-dollar value for the transfers that it made to F&M in the form of increased

13

equity interest in its real property that secured Stewart's obligations to F&M and in the form of decreased guarantee liability for the Stock Purchase obligation. The Court declines to find that the value, which passed to Debtor, was less than reasonably equivalent to the value of the transfers Debtor made to F&M. Because F&M was paid the balance owed it from proceeds of the sale of the real property and subsequently released its liens on the property, the Debtor's bankruptcy estate *realized* the reasonably equivalent value of its transfers by way of the surplus it received from the sale.

It is unnecessary for the Court to discuss again the prejudice that would fall upon F&M if the Court were to permit avoidance of the transfers made to F&M after F&M had released its security interest in real property that would have fully secured the debts it was owed. The estate, and therefore the creditors, have received the value they were entitled to. Again, had Debtor not made the payments to F&M, F&M's outstanding claim would have been larger and this larger claim would have been satisfied from the proceeds of the sale of the real property. This would have meant a smaller recovery for the estate from the proceeds of the sale. Denying the Trustee's attempts to avoid the transfers in question is not only appropriate under the law, but is also equitable and just in these circumstances.

### C.  § 548(a)(1)(B)

The Trustee's remaining avoidance claim is brought under 11 U.S.C. § 548(a)(1)(B). This Section applies to transfers made within one year before the date a bankruptcy petition is filed. The Section provides in pertinent part:

> (a)(1)  The trustee may avoid any transfer (including any transfer to or for the
> benefit of an insider under an employment contract) of an interest of
> the debtor in property, or any obligation (including any obligation to

---

[47] O.C.G.A. § 18-2-74(a)(2) (2004) (emphasis added).

14

> or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . .
>
> (B)(i)  received less than a *reasonably equivalent value* in exchange for such transfer or obligation; and
>
> (ii)(I)  was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .[48]

Under this Section of the Code, a transfer will not be deemed to be constructively fraudulent if the debtor received "reasonably equivalent value" in exchange for the transfer or obligation that was incurred. Section 548(d)(2) provides that the term "value" for purposes of § 548 means "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor."[49] The reasonably equivalent value exception differs from previous versions of the Code, which required "fair consideration." "Reasonably equivalent value," unlike "fair consideration," does not contain a good faith component.

Under § 548(a)(1)(B), whether value has been given for a transfer depends upon all of the facts and circumstances surrounding the subject transfer.[50] Whether an exchange is made for reasonably equivalent value will depend on whether a burdensome obligation is being discharged. The determination is largely a question of fact. Even if adequate consideration for the transfer is given to some entity, § 548 requires that the transfer be set aside if it was not the debtor that received the reasonably equivalent value. The time critical for a determination of whether reasonably equivalent value passed to the debtor is the time when the transfer was made. Neither

---

[48] 11 U.S.C. § 548(a)(1)(B) (2005) (emphasis added).

[49] 11 U.S.C. § 548(d)(2) (2005).

[50] COLLIER ON BANKRUPTCY 5:548.05[1][b] at 548-35 (15th ed. rev. 2006) (citing *In re North Babylon Estates, Inc.*,

subsequent depreciation nor appreciation in the value of the consideration affects whether the value received by the debtor was reasonably equivalent.[51] Likewise, items of value coming to the debtor after the transfer must also be excluded as any part of the consideration, at least where the subsequent value was not bargained for at the time of the original transaction.[52] Two components must be satisfied in order for there to be a finding of reasonably equivalent value: (1) sufficient value must have been received by the debtor; and (2) the value must have been received "in exchange for" the transfer that was made or the obligation that was incurred. The nature of the value that is received need not be tangible, direct economic benefit. Indirect economic benefit will suffice, so long as it is "fairly concrete."[53]

Here, through its payments to F&M, Debtor discharged the burdensome obligation of having its real property subject to the security interest of F&M. Although the debt itself was a personal obligation of Stewart, Debtor's interest in its real property securing the debt was obligated in the case of default. As discussed in depth above, Debtor, with each transfer, increased its equity interest in the real property. This increase represented a direct economic benefit to Debtor itself. The value received by Debtor was the dollar-for-dollar equivalent of the value it transferred to F&M considering that the obligations that its real property secured were contemporarily and proportionately reduced by each payment that Debtor made. The economic benefit was received by Debtor immediately and realized by Debtor upon the sale of the real property. Considering, therefore, that the insolvency requirement of § 548(a)(1)(B) has been stipulated to and that Debtor received contemporary reasonably equivalent value in exchange for the transfers it made to F&M,

---

30 F.2d 372 (2nd Cir. 1928); *Folsom v. Seapy*, 10 F.2d 322 (8th Cir. 1925)).

[51] *Id*. at 548-38.

[52] *Id*.

[53] *Id*. at 548-40 to 41 (citing *In re Minnesota Util. Contracting, Inc.*, 110 B.R. 414, 420 (D. Minn. 1990)).

the Court finds that the Trustee's action to avoid those transfers under § 548(a)(1)(B) must consequently fail.

## CONCLUSION

As the Court has explained in its discussion of each of the three statutes under which the Trustee brings this avoidance action, "valuable consideration" or "reasonably equivalent value" passed to Debtor in exchange for the payments it made to F&M on behalf of personal obligations owed by its principal, John Benjamin Stewart, Jr. ("Stewart"). Determining whether value passed to Debtor in exchange for the transfers it made to F&M and whether that value was adequate under each of the statutes, was the task required of the Court in this case. Both the legal and equitable result under each of the three statutes was to deny avoidance of the transfers. The Court is struck by the fact that this action was even brought by the Trustee considering that prior to the sale of the real property which secured the obligations in question, F&M was fully secured by that real property. The value of the real property was subject to the claim of F&M in case of default by Stewart on any of the obligations. It was not until after the collateral property sold, the secured claims of F&M satisfied, and the surplus from the sale proceeds paid to the estate that the Trustee brought this action. The estate was never entitled to the value held in the real property represented by a balance due to F&M on the defaulted obligations of Stewart. The estate was, however, entitled to the equity in the real property above the security interest of F&M. This value could have been realized either by an avoidance action against F&M for the payments made to it by Debtor or by a taking of the surplus proceeds of a sale of the real property after satisfaction of the obligations owed F&M. The estate and the Trustee could not, however, have both.

Accordingly, the Court holds that summary judgment in this case is appropriate considering that no genuine issue of material fact exists and that in consideration of the foregoing discussion, summary judgment shall be entered in favor F&M.